# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDDIE LEE LUCKETT, JR.,** | : | |
| | : | **Civil No. 1:09-CV-00378** |
| **Petitioner** | : | |
| | : | **(Judge Rambo)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **LOUIS FOLINO,** | : | |
| | : | |
| **Respondent** | : | |

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

This case, which comes before the Court on a petition for a writ of habeas corpus, arises out of the grisly murder, rape, and robbery of 86 year-old Agnes DeLuca on October 28, 1990.  Petitioner Eddie Lee Luckett, Jr., and two other accomplices, were convicted of these and other charges following a jury trial in the Lackawanna County Court of Common Pleas in 1998.  On November 13, 2000, Luckett was sentenced to, *inter alia*, life in prison plus 30 years for the commission of these crimes.

The Court is now called upon in this case to decide Luckett's petition for a writ of habeas corpus.  In this petition, Luckett contends that his conviction and sentence should be vacated or set aside for a variety of reasons, most having to do with his contention that his various appointed lawyers during his trial, appeals, and

post-conviction proceedings, were ineffective for a host of reasons.  The Petitioner

also claims to be entitled to habeas relief because he was allegedly denied due

process or equal protection based upon the refusal of a court to provide him with

transcripts and other records from his trial during his appeal or post-conviction

proceedings, and based on the Commonwealth's refusal to grant sufficient access

to certain DNA testing that was performed during the investigation into Ms.

DeLuca's murder.

Luckett has been a prolific, if procedurally chaotic, litigant, which has

complicated these proceedings by greatly confusing the procedural posture of this

case.  At some point either before and after Luckett filed this habeas petition, it

appears that he also filed a supplemental motion for post-conviction relief in the

state courts.  In this supplemental state petition, Luckett sought relief on a number

of issues, including on some that may have been included in the instant petition.

As a result of these supplemental post-conviction proceedings, we previously

recommended to the District Court that Luckett's petition in this Court be

dismissed because it contained both exhausted and unexhausted claims.  As

explained below, after we made this recommendation, the Pennsylvania Superior

Court entered an order dismissing Luckett's supplemental claims for post-

conviction relief on the grounds that they were substantially untimely and

procedurally barred.  As a result of this state ruling, we conclude that Luckett's

petition – which contains two exhausted claims regarding the sufficiency of the

evidence presented against him at trial, together with a host of procedurally barred

claims – is properly presented for disposition.  For the reasons that follow, we will

recommend that the District Court deny Luckett's petition for relief under 28

U.S.C. § 2254.

## II.     STATEMENT OF FACTS AND OF THE CASE

### A.     Factual Background[1]

The Pennsylvania Superior Court succinctly summarized the circumstances

surrounding the murder of Agnes DeLuca as follows:

> [O]n October 28, 19990, [Petitioner], along with Andrew
> Dillon and another man, went to the home of 86 year-old
> Agnes DeLuca in order to rob her.  Dillon broke a window,
> opened the door, and let the group in.  Once inside, DeLuca
> screamed. [Petitioner] grabbed DeLuca around the neck to
> quiet her and in doing so broke her neck and paralyzed her.
> They laid DeLuca on her bed while they looked around for
> valuable that they stashed in a pillowcase.  They beat her
> with blunt force in the head, stabbed her five times in the
> neck and twice in the back.  The three individuals then
> anally raped and asphyxiated her.  Her body was found two
> days later.

---

[1]  The factual background is taken principally from the parties' submissions and, where
Respondent has provided them, from copies of documents from the state court record.

(Doc. 28, Attach. 1, at 2 .)  The Superior Court further recited that between 1990 and 1995, Luckett at different times and in different prisons, made statements to three inmates implicating himself in the DeLuca murder.  (Id.)  In addition to his revealing discussions with fellow inmates, Luckett made implicating statements to two detectives during an interview at the State Correctional Institution at Greene. During trial, the prosecution relied upon Petitioner's own statements, the testimony of other witnesses, and other circumstantial evidence in proving the charges against Luckett.

The jury returned a verdict convicting Luckett of first-degree murder, robbery, burglary, causing or risking a catastrophe, and criminal conspiracy. Luckett was subsequently sentenced to a term of life imprisonment, plus 30 years, to be served consecutively.  On direct appeal, the Pennsylvania Superior Court affirmed the judgment of sentence, and Luckett filed a petition for allowance of appeal with the Pennsylvania Supreme Court.  On May 3, 2001, the Supreme Court remanded the matter to the trial court for appointment of counsel.  The trial court appointed a lawyer to represent the Petitioner, who filed a new petition for allowance of appeal.  The Pennsylvania Supreme Court denied the petition on December 5, 2001.  (Id. at 3.)

On December 14, 2001, Petitioner filed a petition seeking post-conviction relief, and new counsel was appointed to represent him in his post-conviction proceedings. A hearing on the PCRA petition was held on August 8, 2003. While the PCRA petition was pending, on October 22, 2003, Luckett filed a second PCRA petition *pro se*. On November 6, 2003, the PCRA court dismissed the second petition because the first was still pending. Undeterred, Luckett appealed the denial of his second PCRA petition to the Superior Court. On December 23, 2004, the Superior Court affirmed the trial court's decision. (Id.)

On February 18, 2005, a new lawyer was appointed to represent Luckett in his quest for PCRA relief. On August 19, 2005, Luckett filed a supplemental amended PCRA petition with leave of court. On October 14, 2005, the trial court convened an evidentiary hearing on the PCRA petition, at which Luckett's prior counsel testified. On November 21, 2005, Luckett filed a post-hearing brief.

On December 31, 2005, the judge who presided over Luckett's trial and initial PCRA proceedings, retired. The case was reassigned to a new judge, and on November 30, 2006, the Commonwealth filed its brief in opposition to Luckett's supplemental amended PCRA petition. (Id.)

On April 4, 2007, the PCRA court denied Luckett's petition. On April 23, 2007, Luckett filed a *pro se* appeal challenging the PCRA court's decision

denying him relief, as well as a request he had made for transcripts and other records. Curiously, while this appeal was pending, Luckett filed a motion with the trial court seeking leave to proceed *pro se*. On July 7, 2007, the trial court denied the motion on jurisdictional grounds in light of Luckett's pending appeal.

Following review of Luckett's appeal, the Superior Court remanded the matter to the trial court for a hearing to determine whether Luckett's waiver of the right to counsel was knowing, intelligent, and voluntary. After conducting a record inquiry into the matter, on August 30, 2007, the trial court entered an order granting Luckett's motion to waive counsel and proceed *pro se*. Following entry of this order, the Superior Court proceeded to consider the merits of Luckett's pro se appeal. (Id. at 4.)

In its ruling, the Superior Court noted that Luckett had raised eleven separate allegations regarding ineffective assistance of counsel, which the court summarized as follows:

> A. Appellate and trial counsel were ineffective in failing to preserve and present a claim that the evidence was insufficient to support all the convictions.
>
> B. PCRA counsel was ineffective in failing to present a claim that the evidence was insufficient to prove *corpus delicti*, identification, specific intent, and criminal causation, and to negate the alibi evidence of Tanya Pruitt.

C.    Appellate and trial counsel were ineffective in failing to raise a claim that the evidence was insufficient to support the conviction of causing or risking a catastrophe.

D.    Appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness in failing to investigate the significance of the (PCR)-DNA testing being "inconclusive."

E.    Appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness in not objecting to admission of the death certificate prepared by coroner William Sweeney as hearsay.

F.    Appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness in not introducing the statements of A.J. Garrin and Andrew Dillon.

G.    Appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness in not cross-examining Edward Freeman about his prior inconsistent statement regarding where he found the victim's body.

H.    Appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness in not investigating whether Thomas Smith was incarcerated when Appellant allegedly confessed to him.

I.    Appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness in not requesting a jury charge on *corpus delicti*.

J.    Appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness in not requesting a jury charge on alibi evidence.

K.    Appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness in not cross examining FBI Agent Mark Wilson regarding the presence of sperm on the victim's body.

(Id. at 4-6.)  Although the Superior Court rejected the Commonwealth's arguments that Luckett had waived all of the issues on appeal with the exception of one, the Superior Court nevertheless found that only the issues set forth in A, B, C, and K were properly presented to the court, and that Luckett had abandoned the remaining seven issues during the course of the proceedings.  Accordingly, the Superior Court confined its review to issues A, B, C, and K, above.  (Id. at 6-8.)

In a thorough decision addressing each of these issues that the court found had been properly presented, the Superior Court affirmed the decision of the PCRA court, and concluded that Luckett's claims were without merit and that he was not entitled to relief.  The Superior Court entered an order denying Luckett's appeal on September 19, 2008.  (Doc, 28, Attach. 1.)

On March 2, 2009, Luckett filed in the instant petition for a writ of habeas corpus with this Court.  (Doc. 1.)  On April 14, 2009, Respondent filed an answer to the petition.  (Doc. 10.)  In the answer, Respondent argued that the petition must be dismissed for lack of jurisdiction because it constituted a second or successive petition filed in violation of 28 U.S.C. § 2244(b) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  In light of this argument, Respondent declined to provide the Court with copies of the underlying court records, documents, briefs, and other filings listed in the Court's order, and instead

moved for permission to be relieved of this obligation pending the Court's

adjudication of Respondent's jurisdiction argument.  The Court granted this

motion.  (Doc. No. 14.)

On August 24, 2009, this matter was referred to the undersigned for review.

(Doc. 18.)  On September 8, 2009, we entered a memorandum and order in which

we found that Luckett's application for relief under 28 U.S.C. § 2254 did not

constitute a second or successive petition, and, therefore, rejected Respondent's

assertion that the Court lacked jurisdiction to consider the petition.  (Doc. 19.)

Also in this order, we directed Respondent to file a detailed response to Luckett's

petition and set forth a briefing schedule.  (Id.)

On November 20, 2009, Respondent filed its response to the petition,

together with a motion for summary judgment and an appendix with certain

documents from the state courts.  (Docs. 25, 26, 27.)  Luckett filed a traverse on

December 8, 2009.  (Doc. 32.)  On January 19, 2010, Respondent supplemented

the record with additional documents from the underlying PCRA proceedings.

(Doc. 36.)

Notably, just over one month after commencing habeas proceedings in this

Court, Luckett filed a "supplemental motion for postconviction collateral relief" in

the Court of Common Pleas of Lackawanna County in which he appears to have

redoubled his efforts to obtain post-conviction relief under a number of theories

and issues that had also been raised as bases for relief in this Court.  (Doc. 28,

Attach. 4.)  Upon consideration of Luckett's supplemental PCRA proceedings, we

issued a report on June 22, 2010, in which we recommended that the Court dismiss

Luckett's habeas petition without prejudice to him refiling the petition at such

time as his pending PCRA proceedings had concluded.  (Doc. 37.)  By order dated

August 2, 2010 (Doc. 42), the Court declined to follow our recommendation,

citing legal developments which occurred after the report and recommendation

was filed.  Specifically, the Court noted that after issuance of the report and

recommendation, Luckett submitted a document indicating that the PCRA court

had denied his supplemental PCRA petition, and that his federal claims should,

therefore, be deemed to be exhausted and capable of being reached by this Court

in the instant habeas proceedings.  (Doc. 40.)

Thereafter, on August 10, 2010, Respondent filed a motion, together with a

supporting brief, seeking relief from the Court's August 2, 2010 order rejecting

our report and recommendation.  (Docs. 43, 44.)  In short, Respondent argued that

Petitioner had misled the Court by indicating that the Superior Court had entered

an order that demonstrated that the Petitioner had exhausted his post-conviction

proceedings in state court.  To the contrary, according to Respondent, the state

court documents appended to Petitioner's notice demonstrate only that the Pennsylvania Superior Court affirmed the PCRA court's dismissal of Luckett's second PCRA petition on the grounds that it was untimely and, therefore, not properly filed.  Although not entirely clear from Respondent's motion and brief, it appears that Respondent is arguing that Luckett somehow fundamentally misled the Court about the disposition of his second PCRA proceedings, and that the Court should, therefore, not review the merits of Luckett's petition.[2]  In response to Respondent's motion, On August 10, 2010, the Court entered an order vacating its order rejecting our prior report and recommendation, and remanded the matter to the undersigned "to file a supplemental report and recommendation concerning petitioner's 'Judicial Notice of Exhaustion of State Remedy' (doc. 40)."  (Doc. 45.)

---

[2]  We note that the Respondent has sought only to have the Court adopt our prior recommendation that Luckett's petition be dismissed without prejudice.  (Doc. 44.)  As we explain below, we no longer find that Luckett's petition should be dismissed without prejudice; rather, we conclude that the record shows that Luckett is seeking relief on two exhausted claims and also on a slew of claims that are untimely and, therefore, procedurally barred.  The recent order of the Pennsylvania Superior Court makes clear that the entirety of Luckett's second PCRA petition has been found to be substantially untimely, and has therefore been dismissed from the state courts.  As explained at more length below, these claims are, therefore, procedurally defaulted and not subject to review in this habeas proceeding.  Because we also conclude that Luckett has presented no basis for habeas relief on the two exhausted, non-barred claims that he has advanced in this action, we will recommend that the Court deny Luckett's petition outright.

In accordance with the Court's instructions, we have undertaken a review of the documents that Petitioner filed in support of his contention that he has now fully exhausted his state court remedies with respect to a number of his claims for relief, and we conclude that these documents may be sufficient to show that Petitioner has fully exhausted his state court remedies. Despite Respondent's oblique assertions that Luckett's notice regarding the exhaustion of his claims is inadequate, it appears from these documents that the Pennsylvania Superior Court rendered a decision on Luckett's supplemental PCRA claims, and this decision was adverse to Luckett's interests. As explained below, a petitioner in a PCRA proceeding generally is not required to seek review with the Pennsylvania Supreme Court in order to exhaust a claim. See Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004) (holding that review by the Supreme Court of Pennsylvania is "unavailable" for purposes of exhausting PCRA claims because that court, pursuant to its own order, does not require a petitioner to seek review of an adverse Superior Court ruling in order to exhaust). Accordingly, a petitioner generally needs only to present his claims to the Pennsylvania Superior Court in order to fulfill the AEDPA's exhaustion requirements. See Williams v. Folino, No. 07-1099, 2007 U.S. Dist. LEXIS 98988, 2008 WL 336306, at *3 (E.D. Pa. Feb. 4, 2008) (observing that "a habeas petitioner successfully exhausts a claim by

12

bringing it to the Superior Court either on direct appeal or during PCRA proceedings"). Because it is clear that Luckett pursued an appeal of the PCRA court's decision to the Superior Court, and that such appeal was adjudicated, we find that Luckett had fulfilled the AEDPA's exhaustion requirements.

However, although it appears that Petitioner attempted to exhaust his supplemental claims for relief, it is clear that Petitioner has been found to have procedurally defaulted his supplemental claims for post-conviction relief in state court, and these claims are, therefore, not properly presented in federal court in proceedings under 28 U.S.C. § 2254. For the reasons explained below, we will recommend that the Court deny relief on Luckett's procedurally defaulted claims,. See, e.g., Coleman v. Thompson, 501 U.S. 722, 749 (1991) ("A federal court cannot grant relief where the petitioner 'has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule.'"). Below we recite the legal standards that apply to petitions for habeas relief brought pursuant to 28 U.S.C. § 2254, before proceeding to consider Luckett's claims within the context of that legal framework.

## III.   DISCUSSION

### A.  State Prisoner Habeas Relief–The Legal Standard.

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> **(A)** the applicant has exhausted the remedies available in the courts of the State;
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

### (1.)   Substantive Standards For Habeas Petitions

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal

courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

These principles apply with particular force to claims of ineffective assistance of counsel. A Petitioner like Luckett faces an exacting burden when he collaterally challenges a conviction and sentence based upon the alleged ineffectiveness of counsel. As the Supreme Court has noted:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or... sentence has two components. First, the defendant must show that counsel's performance was deficient.

This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or... sentence resulted from a breakdown in the adversary process that renders the results unreliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).

Thus, in order to succeed in a claim of ineffective assistance of counsel, the petitioner must show both "cause"; that is, a legally deficient performance by counsel, and "prejudice" resulting from that ineffective performance. With respect to the first element of this test, in assessing the competence of counsel, "[j]udicial scrutiny of counsel's performance must be highly deferential, " id. at 689, and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

### (2).   Deference Owed to State Court Rulings.

These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal

proceedings. There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under §2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. §2254(d)(1); or (2) was "based upon an unreasonable determination of the facts," see 28 U.S.C. §2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. See Rice v. Collins, 546 U.S. 333, 338-39 (2006); see also Warren v. Kyler, 422 F.3d 132, 139-40 (3d Cir. 2006); Gattis v. Snyder, 278 F.3d 222, 228 (3d Cir. 2002).

In addition, § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. See 28 U.S.C. §2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of

criminal proceedings. <u>See, e.g.</u>, <u>Demosthenes v. Baal</u>, 495 U.S. 731, 734-35 (1990); <u>Maggio v. Fulford</u>, 462 U.S. 111, 117 (1983) (per curiam).

These deferential standards of review also guide our assessment of the legal claims concerning the effectiveness of counsel. Thus, any state court factual findings in this field are presumed correct unless it can show by clear and convincing evidence that these findings were erroneous. Moreover, the state courts' decisions applying the Supreme Court's <u>Strickland</u> standard for assessing the competence of counsel must be upheld unless it can be shown that these decisions were either: (1) "contrary to" or involved an unreasonable application of clearly established case law; <u>see</u> 28 U.S.C. §2254(d)(1); or (2) were "based upon an unreasonable determination of the facts," <u>see</u> 28 U.S.C. §2254(d)(2). <u>See, e.g.</u>, <u>Roland v. Vaughn</u>, 445 F.3d 671, 677-78 (3d. Cir. 2006) (applying § 2254(d) standard of review to ineffectiveness claim analysis); <u>James v. Harrison</u>, 389 F.3d 450, 453-54 (4th Cir. 2004)(same).

### (3). <u>Procedural Thresholds for Section 2254 Petitions.</u>

#### (a). <u>Exhaustion of State Remedies and Procedural Default.</u>

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that the petitioner "has exhausted the remedies

available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. See Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition. Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent"

of those presented to the state courts.  Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v.Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

While this exhaustion requirement compels petitioners to have previously given the state courts, a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim," Picard v. Connor, 404 U.S. 270, 276 (1971), this requirement is to be applied in a commonsense fashion.  Thus, the exhaustion requirement is met when a petitioner submits the gist of his federal complaint to the state courts for consideration, without the necessity that the petitioner engage in some "talismanic" recitation of specific constitutional claims. Evans, 959 F.2d at 1230-33. Similarly, a petitioner meets his obligations by fairly presenting a claim to the state courts, even if the state courts decline to specifically address that claim.  See Dye v. Hofbauer, 546 U.S. 1(2005) (per curiam); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).

Oftentimes, these petitions may either contain wholly unexhausted claims or contain what are referred to as "mixed" claims: petitions with both exhausted and

unexhausted claims. In such instances, the court has several courses available to it. First, the court can dismiss the petition without prejudice, so that the petitioner can either return to state court and totally exhaust his claims, or proceed in federal court on a petition which raises only wholly exhausted issues.    Rose v. Lundy, 455 U.S. 509 (1982). This total exhaustion approach facilitates the important goals of federalism and comity that are essential to the exhaustion rule, and allows for complete legal and factual development of these cases in the state legal system before petitions are presented in federal court.

However, because strict compliance with this total exhaustion rule can create procedural dilemmas for some petitioners who may be unable to fully exhaust state remedies on mixed claim petitions before the one-year statute of limitations prescribed for state habeas petitions elapses, the courts have adopted another procedure which may be employed in a limited number of cases, a "stay and abeyance" procedure in which the federal habeas petition is stayed pending exhaustion of state remedies by the petitioner. Rhines v. Weber, 544 U.S. 269 (2005).

Yet, while granting a stay and abeyance is an available procedure, it is not a preferred course of action in these cases. Because a "stay and abeyance"

procedure, if used too frequently, can undermine the policies favoring prompt and

orderly resolution of state habeas petitions, the Supreme Court has held that:

> [S]tay and abeyance should be available only in limited circumstances.
> Because granting a stay effectively excuses a petitioner's failure to
> present his claims first to the state courts, stay and abeyance is only
> appropriate when the district court determines there was good cause for
> the petitioner's failure to exhaust his claims first in state court.
> Moreover, even if a petitioner had good cause for that failure, the district
> court would abuse its discretion if it were to grant him a stay when his
> unexhausted claims are plainly meritless.

Rhines v. Weber, 544 U.S. at 277. Therefore, in order to qualify for a stay and

abeyance a petitioner should "satisf[y] the three requirements for a stay as laid out

in Rhines: good cause, potentially meritorious claims, and a lack of intentionally

dilatory litigation tactics." Heleva v. Brooks, 581 F.3d 187, 192 (3d. Cir.2009).

A necessary corollary of the AEDPA's exhaustion requirement is the

procedural default doctrine which applies in habeas corpus cases. Certain habeas

claims, while not exhausted in state court, may also be incapable of exhaustion in

the state legal system by the time a petitioner files a federal habeas petition

because state procedural rules bar further review of the claim. In such instances:

> In order for a claim to be exhausted, it must be "fairly presented" to the
> state courts "by invoking one complete round of the State's established
> appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-
> 45, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If a claim has not been fairly
> presented to the state courts and it is still possible for the claim to be
> raised in the state courts, the claim is unexhausted. . . .

> If a claim has not been fairly presented to the state courts but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play. A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule. Federal courts may not consider the merits of a procedurally defaulted claim unless the applicant establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d. Cir. 2002)(citations omitted).

"[A] federal court will ordinarily not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus '[o]ut of respect for finality, comity, and the orderly administration of justice.' This is a reflection of the rule that 'federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds.'." Hubbard v. Pinchak ,378 F.3d 333, 338 (3d Cir. 2004)(citations omitted). Given these concerns of comity, the exceptions to the procedural default rule, while well-recognized, are narrowly defined. Thus, for purposes of excusing a procedural default of a state prisoner seeking federal habeas relief, "[t]he Supreme Court has delineated what constitutes 'cause' for the procedural default: the petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Werts v. Vaughn, 228 F.3d 178, 192-193 (3d Cir.

23

2000)(citations omitted). Similarly, when examining the second component of this

"cause and prejudice" exception to the procedural default rule, it is clear that:

> With regard to the prejudice requirement, the habeas petitioner must prove " 'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' " This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial. In the context of an ineffective assistance claim, we have stated that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."

Id. at 193 (citations omitted).

Similarly, the "miscarriage of justice" exception to this procedural bar rule

is also narrowly tailored, and requires a credible assertion of actual innocence to

justify a petitioner's failure to comply with state procedural rules. Hubbard v.

Pinchak, 378 F.3d 333, 338 (3d Cir. 2004).

Procedural bar claims typically arise in one of two factual contexts. First, in

many instances, the procedural bar doctrine is asserted because an express state

court ruling in prior litigation denying consideration of a habeas petitioner's state

claims on some state procedural ground. In such a situation, courts have held that:

> A habeas claim has been procedurally defaulted when "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). For a

federal habeas claim to be barred by procedural default, however, the state rule must have been announced prior to its application in the petitioner's case and must have been "firmly established and regularly followed." Ford v. Georgia, 498 U.S. 411, 423-24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). Whether the rule was firmly established and regularly followed is determined as of the date the default occurred, not the date the state court relied on it, Doctor v. Walters, 96 F.3d 675, 684 (3d Cir.1996), because a petitioner is entitled to notice of how to present a claim in state court, Ford, 498 U.S. at 423-424, 111 S.Ct. 850.

Taylor v. Horn, 504 F.3d 416, 427-428 (3d Cir.2007).

In other instances, the procedural bar arises, not because of an express state court ruling, but as a consequence of a tactical choice by a habeas petitioner, who elects to waive or forego a claim in the course of his state proceedings, and thus fails to fully exhaust the claim within the time limits prescribed by state statute or procedural rules. In such instances the petitioner's tactical choices in state court litigation also yield procedural defaults and waivers of claims federally. See, e.g., Johnson v. Pinchak, 392 F.3d 551(3d. Cir. 2004)(procedural default when petitioner failed to timely pursue state claim); Hull v. Freeman, 991 F.2d 86 (3d. Cir. 1993)(same). Accordingly, a petitioner's strategic choices in state court waiving or abandoning state claims may act as a procedural bar to federal consideration of his claims, unless the petitioner can show either "cause and prejudice" or demonstrate a "fundamental miscarriage of justice". Id.

## (4). **Standard of Review of Section 2254 Petitions.**

If a federal court concludes that a claim is not procedurally defaulted and that the state courts have adjudicated the federal claim on its merits, the court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" under § 2254(d) if the state court decision resolves the claim on the basis of its substance, rather than on a procedural or other ground. Thomas v. Horn, 570 F.3d 105, 115 (3d Cir. 2009). A decision is contrary to Supreme Court precedent "if the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." Fahy v. Horn, 516 F.3d 169, 189 n.20 (3d Cir. 2008) (quoting Shelton v. Carroll, 464 F.3d 423, 436-37 (3d Cir. 2006)). An unreasonable application of clearly established law

occurs where the state court: "(1) unreasonably applies the correct Supreme Court precedent to the facts of a case; or (2) unreasonably extends or refuses to extend that precedent to a new context where it should (or should not) apply." Id.; see also McMullen v. Tennis, 562 F.3d 231, 236 (3d Cir. 2009), cert. denied, __ U.S. __, 130 S. Ct. 72, 175 L. Ed. 2d 51 (2009). "The unreasonable application test is an objective one – a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005) (cited cases omitted).

In reviewing a § 2254 petition, the court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); cf. Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (noting that the clear and convincing standard contained in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard set forth in § 2254(d)(2) applies to factual decisions). A federal court must presume the correctness of a state court's factual findings whether the findings of fact are explicit or implicit. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).

Guided by the foregoing legal considerations, we agree with the Respondent that Luckett's petition for habeas relief must be denied.

**B.** **Luckett's Petition Should Be Denied Because His Claims are Meritless or Otherwise Procedurally Defaulted.**

**1.** **Procedurally Defaulted Claims**

As an initial matter, we find that although Luckett presents some 12 different grounds for relief in his petition, it appears clear from the record that all but four of Luckett's claims were either abandoned during the course of his underlying PCRA proceedings, or were otherwise procedurally defaulted in the state courts, and we, therefore, lack legal authority to grant relief upon any of these claims.[3] To the extent that Luckett challenges the state court decisions asserting, vaguely, that they were not rendered pursuant to an independent and adequate state procedural rule, or otherwise that there exists cause to excuse his

---

[3] Our review of Luckett's claims was complicated substantially by his representation in paragraph 15 of his petition that at the time he commenced these habeas proceedings, he concurrently had pending a petition for PCRA relief with the Lackawanna County Court of Common Pleas in which he seems to state that he was actively seeking relief in the state courts on "Grounds (2) - (17)" of the federal habeas petition. (Doc. 1, ¶ 15.) It was difficult to perceive what each of these "grounds" for relief may have been, and particularly so because Luckett's federal petition appears to set forth only 12 separate bases for habeas relief. Upon careful examination, it appears that what Luckett meant is that he had commenced a second PCRA petition in which he advanced the claims for relief that he had made in his original habeas petition in this Court, which was dismissed without prejudice in April 2007 due to Luckett's failure to exhaust. Luckett summarized these claims in paragraph 11(c) of his current petition. (Doc. 1, ¶ 11(c).) Notwithstanding our initial confusion, the state courts brought clarity to these issues by explaining in unmistakable terms that Luckett's second PCRA petition was dismissed *in toto* on the grounds that it was untimely and, therefore, procedurally barred pursuant to well-settled state law governing PCRA proceedings. (Doc. 40, Ex. A.) Furthermore, the Superior Court found that these claims – all raised in a second PCRA petition – were properly dismissed by the PCRA court on the grounds that they were untimely.

default, and that he would be unfairly prejudiced by the failure to have his claims heard in this Court, we find his assertions unpersuasive. With respect to Luckett's first set of PCRA proceedings, the Pennsylvania Superior Court made a record finding that Luckett had abandoned all but four of his claims for relief before the state courts. Luckett has provided this Court with no compelling reason why we should not respect this judicial finding by Pennsylvania's intermediate appellate court, or why we should disregard Luckett's litigation strategies that he pursued in the state courts, and which now significantly restrict the scope of the claims that he may permissibly advance in this federal habeas proceeding. Aside from Luckett's failure to provide us with sound and persuasive reasons why the Court should disregard his prior abandonment of claims raised in his first petition, we can identify no legitimate basis for doing so.

Similarly, in its recent order affirming the dismissal of Luckett's second PCRA petition, the Pennsylvania Superior Court clearly found that **all** of the claims that Luckett sought to advance were procedurally defaulted because they were substantially untimely. (Doc. 40, Ex. A, Order of Pennsylvania Superior Court dated June 29, 2010, at 3.) Indeed, it is beyond dispute that Luckett's second set of PCRA claims were not filed until more than seven years had elapsed since his judgment of sentence had become final.

As the Superior Court noted, the timeliness of a PCRA petition is a

jurisdictional prerequisite under state law.  See Commonwealth v. Hackett, 956

A.2d 978, 983 (Pa. 2008), cert. denied, ___ U.S. ___, 129 S. Ct. 2772, 174 L. Ed.

2d 277 (2009).  A PCRA petition – including a second or subsequent petition – is

required to be filed within one year of the date that the underlying judgment

becomes final.  42 Pa. C.S. § 9545(b)(1).  A judgment is deemed to be final for

purposes of the PCRA "at the conclusion of direct review, including discretionary

review in the Supreme Court of the United States and the Supreme Court of

Pennsylvania, or at the expiration of time for seeking review."  Id. at § 9545(b)(3).

Because the Superior Court found that Luckett had filed his second PCRA petition

more than seven years after his judgment of sentence had become final, and

because Luckett failed to allege and prove any recognized exception to the

PCRA's timeliness requirements, the Superior Court found that Luckett's second

PCRA petition had been properly dismissed as untimely.  On the record before us,

we can perceive no basis for disputing the state courts' findings regarding

Luckett's substantially untimely application for post-conviction relief, and Luckett

has given us no grounds upon which we could otherwise find that there exists both

"cause and prejudice" that must be satisfied for this Court to consider his federal

claims despite the fact that these claims were found to be either abandoned or

procedurally defaulted in state court. Accordingly, we are constrained to find that all of the claims that Luckett has sought to advance in this action, with the exception of the four claims addressed below, are procedurally defaulted and not properly subject to review by this Court in these proceedings.

2. **Luckett's Exhausted and Non-Barred Claims Have Either Not Been Presented to this Court, or are Otherwise Meritless and Should Be Denied.**

Of the numerous claims that Luckett sought to advance in his habeas petition, it appears that only four of these claims were properly exhausted and addressed on their merits by the Pennsylvania courts. In its decision from September 18, 2008, the Pennsylvania Superior Court concluded that of the eleven issues that Luckett had raised in his first PCRA petition, he had abandoned all but four of them. According to the Superior Court, the four claims that Luckett had properly presented to the state courts for adjudication included the following:

A. Appellate and trial counsel were ineffective in failing to preserve and present a claim that the evidence was insufficient to support all the convictions.

B. PCRA counsel was ineffective in failing to present a claim that the evidence was insufficient to prove corpus delicti, identification, specific intent, and criminal causation, and to negate the alibi evidence of Tanya Pruitt.

C.	Appellate and trial counsel were ineffective in failing to raise a claim that the evidence was insufficient to support the conviction of causing or risking a catastrophe.

K.	Appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness in not cross examining FBI Agent Mark Wilson regarding the presence of sperm on the victim's body.

(Doc. 28, Ex. A, Order of Pennsylvania Superior Court dated September 19, 2008, at 5, 7.)  We have compared these four exhausted claims with the claims that Luckett has set forth in his current petition.  From this review, even reading Luckett's claims in a light favorable to him, we conclude that Luckett has included only two of his exhausted claims in this petition.  These two claims are (1) that trial and appellate counsel were ineffective by failing to advance or preserve an argument that the Commonwealth had presented insufficient evidence to support any of Luckett's convictions, and (2) that his trial and appellate counsel were ineffective in failing to argue that the evidence at trial was insufficient to support a conviction of causing a catastrophe.[4]  Because the second of these claims is clearly included in the scope of the first claim, we will address the two claims together.

The United States Supreme Court precedent governing ineffectiveness of counsel claims is familiar and well settled, having been announced in <u>Strickland v.</u>

---

[4]  The first of these claims is set forth as "Ground 9" in Luckett's habeas petition (Doc. 1, at 16.)  The second of these claims is set forth as "Ground 12".  (<u>Id.</u> at 19.)

Washington, 466 U.S. 668 (1984). Under Strickland's two-pronged test, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under the professional norms that prevailed at the time that counsel rendered legal services. Strickland, 466 U.S. at 688. Under Strickland's second prong, a petitioner must show that "there is a reasonable probability that, but for counsel's error the result would have been different." Id. at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome" of the trial. Id. at 688.

In considering Luckett's ineffectiveness of counsel claims, the Pennsylvania Superior Court relied upon the standard set forth in Commonwealth v. Treadwell, 911 A.2d 987, 989 (Pa. Super. 2006), and Commonwealth v. McGill, 832 A.2d 1014 (Pa. 2003). (Doc. 28, Ex. A, at 9.) This standard provides that in order to prevail upon a claim that counsel was constitutionally ineffective, an applicant for post-conviction relief must overcome a presumption that counsel's performance was competent by showing that (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) the defendant was prejudiced by counsel's action or omission. All three of these prongs must be satisfied in order to establish an ineffective assistance claim under Pennsylvania

law.  <u>Treadwell</u>, 911 A.2d at 989.  Although the Superior Court followed Pennsylvania law in addressing Luckett's ineffectiveness claims, that law is "not contrary to <u>Strickland</u>."  <u>Jacobs</u>, 395 F.3d 92, 106 n.9 (3d Cir. 2005). Accordingly, the question before the Court is whether the Superior Court's decision regarding Luckett's ineffectiveness claims involved an unreasonable application of the <u>Strickland</u> standard.

The Superior Court first examined the underlying record to determine whether there was any merit to Luckett's challenge to the sufficiency of the evidence used to convict him of each charge.  (Doc. 28, Ex. A, at 9.)  The court began by noting that its inquiry focused upon whether there was sufficient evidence to support the jury's finding, looking at whether the proofs, considered in the light most favorable to the Commonwealth as the verdict winner, were sufficient to enable a reasonable jury to find every element of the crimes beyond a reasonable doubt.  (<u>Id.</u>, at 10.)  The court also noted that the Commonwealth was permitted to prove its case entirely through the use of circumstantial evidence, and that the trier of fact was free to believe part, all, or none of the evidence presented. (<u>Id.</u>)  The Superior Court next recited that elements that the Commonwealth was required to prove with respect to each of the crimes for which Luckett was charged, including first-degree murder, robbery, burglary, conspiracy to commit

first-degree murder, conspiracy to commit robbery, conspiracy to commit burglary, and conspiracy to commit causing or risking a catastrophe. (Id., at 10-12.)

Having reviewed the elements of each of the crimes charged, the Superior Court next reviewed the record, observing that at trial the Commonwealth had presented evidence regarding:

> (1) the manner and cause of Mrs. DeLuca's death; (2) the dangerous level of gas in Mrs. DeLuca's apartment due to the stove being turned on but the pilot lights being extinguished; (3) the relationship among [Luckett], Dillon, and the third man; (4) eyewitness testimony about events leading up to and following the murder; and (5) statements made by [Luckett] to three acquaintances and two police officers in which [Luckett] implicated himself in the murder of Mrs. DeLuca, providing details that were not known or available to the public.

(Id., at 12-13.) The Superior Court then examined the PCRA court's assessment of Luckett's arguments, where the PCRA court concluded that Luckett's claims could largely be reduced to a claim that witnesses against him were not credible. The Superior Court embraced the PCRA court's finding that a sufficiency argument that his predicated upon disagreements with the credibility determinations made by the fact finder, or discrepancies in the accounts of witnesses, simply does not warrant relief because it is the jury's role to assess the value of this evidence. Accordingly, the Superior Court agreed with the PCRA

court's conclusion that trial counsel could not have been ineffective, as Luckett

contended, because there was simply no basis to challenge the sufficiency of the

evidence presented, given that Luckett's arguments were actually about the

credibility of witnesses and quality of evidence, rather than its sufficiency.

Following its review, the Superior Court concluded that the PCRA court's

findings were supported in the record, and that its legal conclusions were without

error. (Id. at 15.) Furthermore, the Superior Court expressly found that Luckett

had failed to demonstrate that his underlying claim had any merit; for that

additional reason, the court found that Luckett was unable to demonstrate that his

trial or appellate counsel were ineffective for failing to preserve a challenge to the

sufficiency of the evidence presented.

Upon consideration, we find no error, of constitutional dimension or

otherwise, in the decisions of the PCRA court or the Superior Court with respect

to Luckett's claims that his counsel was ineffective for failing to present or

preserve an argument regarding the sufficiency of the evidence against him. In

Jackson v. Virginia, 443 U.S. 307 (1979), the United States Supreme Court

addressed the standards governing insufficiency of evidence claims, holding that

"the relevant question is whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." Id. at 319. The standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16. The Court also explained in Jackson that circumstantial evidence by itself may suffice for a finding of guilt beyond a reasonable doubt. Id. at 324-25. In addition, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326.

In consideration of this governing legal standard, we must agree with both the PCRA court and the Superior Court that Luckett's trial and appellate counsel were not constitutionally ineffective for failing to present or preserve an insufficiency of the evidence claim with respect to any of the charges in this case. Furthermore, we do not find that the Superior Court's decision regarding Luckett's claims constituted an unreasonable application of clearly established federal law. In reviewing the materials submitted by the parties in this case, including the lengthy PCRA transcripts, and the Superior Court's thorough decision upholding the PCRA court's denial of Luckett's petition, we find that Luckett has failed both to sufficiently allege or demonstrate that he is entitled to habeas relief. Having

concluded that the underlying proceedings comported with the constitutional standards enunciated in <u>Jackson</u>, we cannot find that the Superior Court's decision was contrary to, or involved an unreasonable application of federal law. Accordingly, we find that habeas relief under 28 U.S.C. § 2254(d)(2) on Luckett's claims regarding the sufficiency of the evidence against him is not warranted, and we will recommend that Luckett's petition be denied with respect to the two exhausted, non-barred claims for relief that he has presented to the Court in this proceeding.

## IV. <u>RECOMMENDATION</u>

For the reasons set forth above, IT IS HEREBY RECOMMENDED that the petition for a writ of habeas corpus (Doc. 1) be DENIED. IT IS FURTHER RECOMMENDED that a certificate of appealability not issue in this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A

judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of August, 2010.

*S/Martin C. Carlson*
**United States Magistrate Judge**